Next case please. 3-14-09-580. People of the State of Illinois. Appellant by Gary Genetovic v. Al Carter, Jr. Appellee by Kelly Craig. Mr. Genetovic, good afternoon. Good afternoon. May it please the Court. Counsel? I can't help but ask, why weren't you on the next one? They asked me, but I declined. He's been on everything except for one. This is a state appeal from the suppression order, and the issue is limited strictly to a medical discovery. If the Court would please indulge me, I would like to take and go through the facts simply to, very quickly, give a perspective on the nature of the people's argument here. Are you thinking we haven't read the briefs? No, not at all. But it kind of eases me into my argument. But, very quickly, Officer Gerskus testified that he was on the execution of a search warrant at the defendant's residence. And what they did is they searched the upstairs and they searched the downstairs. During the course of that search, they searched the basement. Apparently, unbeknownst to anyone in the basement, the basement had also been rented out to a Mr. Murray, a Richard Murray. And so, during the course of the search, narcotics or contraband was found in the basement. So, what eventually happened is, Mr. Murray was brought upstairs. After the search was pretty much completed, one of the officers said, basically, Mr. Murray's going to be under arrest. Which Mr. Murray responded, saying, wait a second, wait a second, I'll tell him. And the defendant responded with a comment, I told you not to bring anything in here, etc., etc. So, what happened is, Mr. Murray then said, I want to speak to the police, I want to speak to the officer, I want to speak to Officer Gerskus. He said, just a minute. They took him outside, read the Miranda warnings, and in talking to him, Murray told Gerskus that there was a gun still inside the residence. It was located in a couch. Gerskus then called Sergeant Slavich, who was still inside the house, telling him that basically he needed to come outside to speak to Murray. What then happened is, Sergeant Slavich then testified in the execution of the search warrant. Richard Murray was detained, later subsequently questioned by Gerskus. Gerskus contacted Slavich as he was speaking with the defendant inside the house. Basically, the police were getting ready to leave, but had not yet left when he received the phone call that Murray basically had requested to speak to him. Slavich exited, and I believe all the police then exited the house. Slavich then spoke with Murray, just off the back porch. He received the same information, turned around, walked out the house, knocked on the door, entered the house, searched the couch, found the gun. Now the trial judge, excuse me, the trial judge here, based on this evidence, the trial judge, because one of the arguments that the people had argued, was inevitable still. And what he determined is, he said, although the search for drugs supported by probable cause, seizure of the gun, is not inevitable, because if Murray had not been arrested, he would not have given up defendant, and the gun would never have been found as the original search was over. So basically, what the trial judge had originally said in this case, was the fact that the defendant was complaining about the search of the downstairs, because that belonged to Murray. And so he was trying to make an argument asserting the fact that Murray's constitutional rights were violated. And the trial judge at first kind of accepted that, but then he reversed himself on that, but then made this finding, that the gun would not have been discovered had he not arrested Murray. Well, the only way they're going to arrest Murray is because of what they found in the basement. But the trial judge found that the search of the basement, that nobody knew at this point that it was a quote unquote triplex, because the way the house was situated, the way the house was constructed, it had a separate entrance going upstairs, it only had two mailboxes. And so all the indications were it was a duplex, not a triplex. And so the trial judge kind of reversed himself on that, and said, well, yeah, I can see where it's only a duplex, the police would only have thought there were two places to search, so going in the basement was actually searching the main floor of the house. Did the police search the third floor? Yes, they did. And so, in effect, what it seems to me is the fact that the trial judge, even though he said the defendant can assert the constitutional rights of Murray, his holding on another discovery in effect does that. He says the gun would have been found because the only way they would have found it is from Murray. Well, during the course of the execution of this search warrant under these facts, since the search of the house and that main floor, including its basement, was within the realm of the search warrant, and was something the police could do, they would have come across Murray anyway, which means they would have inevitably discovered the gun because Murray would have been arrested, and he would have given up the defendant with the gun. And so we think that basically, under the facts of this case, the trial judge, in essence, in ruling on another discovery, actually accorded the defendant, actually allowed the defendant to raise a constitutional violation, if you will, of Murray, of the third party, which he has no right to do that because the downstairs was the area that supposedly Murray had rented out. And so we think that the gun would have been discovered that Murray's statement to police was properly obtained. It was independent evidence. It was properly obtained that they would have been able to go and obtain a search warrant had they not re-entered the house. And if they had, would the gun still, by the time they got that search warrant, would the gun have still been there when they got back? They spoke with Murray outside the presence of the defendant. Would the defendant have put two and two together if they knew Murray had done something? I don't know. The search warrant here was for cocaine. Correct. Correct. And they searched the whole place and left. Unfortunately, the one place they did search for the cocaine was the couch. Otherwise, during the course of the search, they would have found it. Also, if Slavich hadn't come outside and then got the information inside, they would have found it. But the second entry, I'm not contesting, I'm not saying that the second entry, by any stretch of the imagination, is constitutional. I'm not arguing that at all. Just the fact that the application of ineligible discovery here is something that I think the trial judge heard in making this finding. And based on that, the people would request this court to reverse that finding. So if I understand you correctly, you admit that the, or don't contest the fact that it was improper to go in once they left. Once all the police left. They needed to get another search warrant to go back in. Yes. But the fact that they went back in and found the stuff is okay through the doctrine of... Application of ineligible discovery. Yeah. Although they had already been there and supposedly didn't look at the couch and didn't find it. Correct. That's the essence. Where did they find the pipe? I don't think that was really disclosed anywhere in there specifically as to where that was found. Okay, because I thought that they found the pipe in the couch that they had searched. If it was on the couch or on the side of the couch, I honestly do not recall at this point. Okay. But from what I was able to find out, they did not actually search the couch itself. Okay, well, my understanding of the facts is that they did search the couch. Okay. But I could be wrong. And quite honestly, I honestly do not recall that at all. Okay. Any other questions? Thank you very much. Ms. Craig, good afternoon. May it please the Court, Counsel? I am Kelly Craig from the Office of the State Appellate Defender. On behalf of the defendant, Al Carter, Jr. There are two reasons that support affirming the trial court's suppression of the evidence. Number one, the evidence seized was a product of an illegal entry into Carter's home. And number two, the search should have never been permitted in the first place because the search warrant was bare bones. Mr. Carter respectfully requests that this Court affirm the trial court's suppression of the evidence. Now, Justice McDade, to answer your question, the pipe, are you referring, they referred to a pipe that was found in the chair, but then they said that there was no, nothing illegal found. So the pipe that was found, it doesn't specify what kind of pipe it was, but the crack pipe that was found was found under the water heater in Mr. Murray's living space. Mr. Murray is in the basement? Yes, the basement tenant. Okay. All right, thank you. The trial court properly found that the inevitable discovery exception to the exclusionary rule did not apply in this case. As I'll discuss later, the warrant here was deficient, but the police were searching Mr. Carter's house because of a warrant. They searched very thoroughly. They went through the coffee cans. They went through the cabinets. They went through everything. They concluded the search was over. They removed Mr. Carter's handcuffs, and as they were on their way out of the house, Richard Murray from the basement said, I got to talk to you. I got to talk to you. They exit the home, and then at that point, Mr. Murray became desperate, and as the trial judge phrased it, he was scared to death he was going to jail, so he rolled over on Mr. Carter. He snitched. So at the time he's rolling over, who are the police that are in the house, in the residence? No one. There's no one in the house. So they've all left? Yes. He was saying he wanted to say something as they were exiting. They exited the house. And that's the defendant's section when they exited? Yes. Yes, that was... I mean, there are three sections of this, so when Murray's saying he wants to say something, they were exiting the defendant's space. Yes.  The upstairs floor of the house was not accessible by anyone other than that tenant, which was Jeffrey Tyler. So they were in Mr. Carter's kitchen, I believe, when Mr. Murray's handcuffed, being let out, saying, I got to tell you something. They leave. He rolls over. This officer, thinks it's slavish, comes back in, goes over to the couch, slices it open with a knife, and finds the gun. But the warrant expires once the search is over. No additional searches can be undertaken on that same warrant. And at this point, as Professor LaFave said in search and seizure, the correct procedure would have been for the police to try to obtain a new search warrant based on this new probable cause. Or consent. But in this, I don't, there wasn't evidence of. No, I said, or they could seek to get consent. Or they could seek to get consent. I'm not suggesting they had it. Gotcha. Yes, they could have done that, but they didn't. Instead, they just barged right back inside, and thus, as the state concedes, made an illegal reentry. But, you know, the state argued that under inevitable discovery that this was okay, but it's not. The purpose of the exclusionary rule is to preclude courts from admitting evidence obtained in violation of the Fourth Amendment and to deter police misconduct, as in to prevent them from doing what they did in this case. The inevitable discovery cannot be used to excuse a warrantless entry into a home. Inevitable discovery is commonly used to admit evidence that would have been found as part of a more, as the investigation unfolded routinely. For example, if a car is illegally searched, but then the car is impounded, and contraband is found based on an inventory search, then yes, that would have been inevitably discovered. But the courts cannot just enter a home because they, pardon me, the police cannot just enter the home because they think that they have probable cause and they plan to get a warrant. The chief evil against which the Fourth Amendment is directed is the physical entry of the home, and warrantless searches cannot be undertaken because the police plan to do it the right way, but then don't. Especially here, the warrant was not a guarantee. Even if they had said, okay, we're going to exit the house, we're going to go to a magistrate and get a warrant, this is all based on the words of a snitch who was never charged with this crime. You know, they let him off for cooperating. So he's obviously angry that he's being arrested and he rolls over. So whether it's not even a guarantee that the court here, that a court would have granted a search warrant based on the words of Mr. Murray. It probably was likely they wouldn't. I think, but that's neither here nor there. But regardless, they should have gotten a warrant. Even if it was inevitable that they would go get a warrant, they still had to go and get the warrant.  And it was for a judge, an impartial magistrate, and not the police, to authorize the search of Mr. Carter's home and destruction of the couch. Applying the inevitable discovery doctrine under the circumstances of Mr. Carter's case would allow tainted evidence to be admitted merely because the police could have chosen to act differently and potentially obtain the evidence by legal means, but they didn't. And this would swallow the constitutional guarantee to be secure in a person's residence. Because the inevitable discovery doctrine, exception to the exclusionary rule, does not apply in this case, and because the warrantless reentry of defendant's home and search of his couch was illegal, this honorable court should affirm the trial court's suppression of the evidence. We also have alternative grounds that the judge's initial finding that the search warrant was bare bones, asked if the residence was correct, and officers should have never been permitted to search the home. The search warrant mostly pertained to the upstairs tenant, Jeffrey Tyler. Officers had observed Mr. Tyler with drugs. There had been a controlled by within the past 14 days,  He was the upstairs tenant. The houses needed a separate key to get upstairs, but Mr. Carter and Mr. Tyler were seen together because they were presumably friendly and they had at least a landlord-tenant relationship. Now, the judge in this case originally ruled that the search warrant was bare bones because there was nothing tying Mr. Carter to the suspected drug activity. This ruling was correct. Now, the judge did change his mind when he learned that he had driven, that Mr. Carter had driven Mr. Tyler from the house to the place of the drug buy, and then he felt that this was then proper for the search warrant to apply to Mr. Carter's residence. But the affidavit for the warrant did not specify where this transaction took place, whether Mr. Carter could see the transaction, whether Mr. Tyler exited the car and walked a distance away to do this drug transaction. There's just no evidence that he was involved in it in any way. And any other information in the affidavit about Mr. Carter was that, oh, a source says that Mr. Carter is involved with this too. But there was no basis of knowledge regarding this tip, and there's also no temporal reference at all in relation to Mr. Carter, whereas with Mr. Tyler there was much more information. The complaint here was so bare bones that it was unreasonable for the police to believe that there was probable cause, and thus the good faith exception to the exclusionary rule cannot apply in this case. Defendants' homes should not have been searched in the first place. For these reasons, Al Carter, Jr. respectfully requests that this Honorable Court affirm the trial court's suppression of the evidence. Any other questions? Thank you, Ms. Craig. Mr. Gunetovic, rebuttal. Briefly, with respect to the argument concerning the search warrant, the application for the search warrant affidavit, I think, establishes probable cause, establishes a reasonable probability, not necessarily proof of guilt or proof beyond a reasonable doubt, that the defendant was involved, or at least there was a reasonable probability he was involved in selling drugs. There was information that he was selling drugs. There was a Crimestoppers report that connected Tyler and the defendant in drug buys. Defendant was seen driving Tyler to a drug buy, to a prearranged drug transaction. The totality of the affidavit, I think, it does establish a reasonable probability such that the search warrant that the trial judge defined, although bare bones, it nonetheless did state probable cause. I think that that is a correct assessment and a correct finding. Are you arguing that the application by itself was enough to establish probable cause? The affidavit supplied by the officer established probable cause. But isn't that the determination of the trial court in deciding whether or not to issue the warrant? Isn't that the decision that the judge makes? Yes. That there's probable cause? Yes. I guess I'm not understanding where Your Honor is going with this. I'm trying to understand exactly what your argument is. It sounded like you were saying that the affidavit by itself was enough to establish probable cause. Well, probable cause determination is made from the affidavit. And so what I'm saying is, in reading the affidavit, the trial judge issued the warrant, found probable cause. And the trial judge, his ruling that although bare bones, that there was nonetheless still probable cause to issue the search warrant, had to have looked at this affidavit that was attached to the application for a search warrant. And his initial finding was that it did not establish probable cause? No. His original finding was it was bare bones, but it nonetheless still established probable cause. He never did find that there was no probable cause. Okay. Let's go back to the first of this inevitable discovery stuff in the warrantless search. So let me give you a hypothetical. If the police are at somebody's house, and you agree the first search is over, right? The warrant expired. Once they got out. Yep. So we're going to take that first warrant out of the picture. And so the police are over, and somebody's, they get a call because of a barking dog somewhere, and they talk to these people, and maybe they go in their kitchen and talk to them, and then they walk outside, and the neighbor who's there with the barking dog says, hey, I tell you, he's got a gun in his, he's a fellow and he's got a gun in his couch. And they say, ooh, walk back up, knock, knock, knock. Hey, we need to come in and look for something. Walk in, bam. What's the difference? Isn't that a good analogous to what we have here? You're not going under a warrant. You've just got information that you think is reliable. If there's a gun in the couch and they walk in there, and they've been in the house talking about whatever, they walk back out, and the neighbor says, by the way, that guy's a fellow and he's got a gun. Walk in there. We're coming in. Walk in, grab the couch, gun it. Okay. Would you agree that that's analogous to it? Yeah. And you would uphold that search on an inevitable discovery? Because if the police had said, well, gee, we're going to go get a warrant, we'll come back and find it. You really think that'd work? In that situation, I would say no. I think the difference is the fact that the police had entered, even though the information is such, I think because of the first entry, even though the first entry was done, I think that basically in that particular situation, having left and having done the reentry, it's the reentry, after they had already done a search. I think that under the facts, I think that they, I was thinking about that at the council table, that I just think that it is different in this situation, and the police would have gone, would have shown, if allowed to take and induce the evidence, would have gone to have gotten a search warrant in this case, based on the fact of a search that was already done of the house. And I think that that is a factor that has to play into it, because otherwise, indeed, I understand what you're saying. What's really that, Kevin? Because let's face it, we all know that any place drugs could be, a gun could be, guns are harder to hide. So any place that you could find drugs, because the great thing about a search warrant for drugs is you can look anywhere, because drugs can be in a teeny, tiniest little spot. And so any place those drugs could have been, a gun could have been. And so, but we agree, legally, that first warrant is gone. Bonsoir, gone. And so now we're acting as if there is no warrant. And so how is this situation, you go out and get reliable information from a neighbor, and he says, I swear he put it there. I'm an honest, upstanding citizen. And there's a gun in his car. What's the difference between that scenario and what we've got here legally? Again, I think it's the fact that because we had the search to begin with, and we had a search warrant for the house, yes, the information, I just, I can't put my finger on it, but for me, I think that although it's analogous, I think it is distinguishable. And I think that, because indeed, if that is the case. Well, what's the legal basis for it? Well, the whole thing is, if we extrapolate from your example, then basically inevitable discovery really should be out the door, because you can say that in any situation, let alone a house. And if we extrapolate from your position, search warrants are out the window. Because you say, well, we went in there and searched his house because an inevitable discovery, because if it had gone in and got the warrant, we would have found it. Your example swallows the search warrant requirement. I don't think, in this situation, I really don't think that it does. I don't think that an inevitable discovery would, in a situation where there's been no search warrant issued for a house, and you were just taking a walk in, I would say that would be bad. In a situation where you have a search warrant issued for a house, come across information that, but for the fact that the police had gone outside to get the information, if they'd already been inside, they would have found it. I think that that, I don't think that in this case, the rule, that the exception is swallowed the rule. Well, even the search warrant is valid, the first, still, but let's assume it's valid again. Either it's valid or it isn't. And if it's not valid, and you conceded it wasn't valid because this search was over in the exit of the house, so we've got no warrant. So you can't say, well, based on this information I got... From the execution of the search warrant. From the execution of this search warrant, what is the difference where the information comes from? You don't have a warrant for the house, you've got information, it may be good, and you think, well, I can go get a warrant, but you can say, well, I'm just going to go do a warrantless search because if I got a warrant, I could do it anyway. And to me, that exception would swallow the rule. In your scenario, I would agree with you. I just, again, I think that because of the fact that, because of the special protections provided by homes, two homes, I should say, as a result of the Fourth Amendment, I think that under the facts here, because the warrant had been issued, and the police, assuming, again, probable cause in the search, I think in this case, had the police gone and gotten the warrant and come back? See, in your case, what you're suggesting is, you're suggesting that the police will take and say, okay, look, I was just in the house, I got this critical information, you know, rather than go get a warrant at 2 o'clock in the morning, I'm just going to go back, I'm not going to go in the morning. This is 2 in the afternoon. 2 in the afternoon, that's right. The point here is the fact that your analogy assumes that the officer is ignoring the warrant requirement. What the officer is saying in his mind is, I'm going to use a negligent discovery to get around the warrant because I got this relevant information, I can give it. We don't look at officers' subjective intent. We don't look at it in terms of whether they have probable cause or whether probable cause is stated and things of this nature. But my point is, what your example kind of exudes to me is there's a purposeful evasion here because the officer says the same to himself, hey, rather than go get the warrant, I'm just going to use a negligent discovery because I could go get one. That would be wrong. That's not what we have here. We don't have the police officers, yes, they made a wrong second entry, but they didn't say, well, rather than go get a warrant, what we're going to do is we're just going to use a negligent discovery to try to do this. I think the officers here, I think they incorrectly believe that they had the ability to go back there. Since they hadn't left the premises because they were still in the back porch or in the yard, even though they entered the house. That's not by the way what's coming up. So you're arguing good faith exception. And do you think the good faith exception adds to this? No, I'm not arguing good faith. It's because, in my case, the officer just said he knows he's not going to do it and then the way you're trying to distinguish it, you think the officer reasonably believed that he could go back in and search. So you're talking about the officer's good faith that he wasn't trying to be evil, he thought he could do it when the law says he can't. And that's a good faith exception argument. No, no, no. That's not a good faith at all. I don't think it's a good faith. I don't think it's a good faith. I'm not making a good faith argument that they went in on the good faith belief that they had the ability to go in because of the warrant. When you say good faith, it seems to me you're talking about the good faith of the officer. Right. Well, I'm just talking about based on the facts and what your analogous situation is, the example you gave me of what you said is it's closely aligned, but what the officer would be able to do is the officer would be able to say, well, you know what? Since we got this ineligible discovery, we won't go get the warrant. We'll use ineligible discovery because we got all this information and we'll use that to take and get in. And what that does is that shows a purposeful evasion of the requirement and not, if you will, ineligible discovery. I don't think that has anything to do with good faith of the officers. I think it just has. Well, that's right. You're the one that's right. Well, anyway, I think we beat this horse to death. So I don't know if I have any more questions. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The Court will stand in vote.